UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MEDEQUA LLC,                                                        Civil Action No. 1:21-CV_6135

                Plaintiff,

                                             **COMPLAINT**

    - against -

O'NEILL & PARTNERS LLC,

                Defendants.
----------------------------------------------------------------X

        Plaintiff, Medequa LLC, (hereinafter "Medequa" or Plaintiff") by and through its attorneys, Condon & Forsyth, LLP, for its Complaint against Defendant O'Neill & Partners LLC, (hereinafter "O'Neill & Partners" or "Defendant"), alleges as follows:

## PRELIMINARY STATEMENT

       1.     This action arises out of O'Neill & Partners' refusal to return Medequa's funds held in escrow, in the amount of Five Million One Hundred Thousand Dollars ($5,100,000.00) ("Escrow Funds"), which was entrusted to O'Neill & Partners as an Escrow Agent.

       2.     By the terms of the parties' Escrow Agreement, O'Neill & Partners, the Escrow Agent, was required to release the Escrow Funds to Medequa within one business day of receipt of a Cancellation Notice or in accordance with joint instruction of Medequa and SonerMed.

       3.     As a result of the Defendant's breach of its contractual obligations and fiduciary duties to Medequa, and it's conversion of Medequa's Escrow Funds, O'Neill & Partners is wrongfully withholding more than Five Million One Hundred Thousand Dollars ($5,100,000.00) of Medequa's funds.

4. Accordingly, Medequa brings this action to recover its Escrow Funds, in the amount of Five Million One Hundred Thousand Dollars ($5,100,000.00), plus exemplary damages, as well as attorneys' fees, interest, and costs, all as permitted by law.

## THE PARTIES

5. Plaintiff Medequa is a limited liability company organized under the laws of the state of Pennsylvania, with its principal place of business in Waynesboro, Pennsylvania.

6. Upon information and belief, Defendant O'Neill & Partners is a limited liability company organized under the laws of the state of Maryland and controlled by Brian O'Neill, with its principal place of business at 7714 Curtis Street, Chevy Chase, MD 20815.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.

8. Venue and personal jurisdiction are proper pursuant to the Escrow Agreement entered into by the parties. Specifically, the Escrow Agreement states that "Each party irrevocably waives any objection on the grounds of venue, forum non-conveniens or any similar grounds and irrevocably…consents to the jurisdiction of the courts located in the State of New York." *See* Ex. 5 ¶ 11.

## FACTUAL BACKGROUND

9. On January 31, 2020, as a result of an exponential increase in worldwide COVID-19 related cases and deaths, the World Health Organization declared a global health emergency.

10. Only three days later, on February 3, 2020, the United States declared a public health emergency due to the COVID-19 outbreak.

11. On March 11 2020, the World Health Organization declared COVID-19 a pandemic stating that it was deeply concerned by the alarming levels of spread and severity of the outbreak.

12. Two days later, the United States declared a national emergency and unlocked billions of dollars in federal funding to fight the disease's spread.

13. Hospitals, other medical service centers, and individuals across the United States were in dire need for personal protective equipment ("PPE") products and unable to obtain those PPE products.

14. King Salman Humanitarian Aid and Relief Center, a humanitarian aid organization created by the King of Saudi Arabia, in an attempt to fight against the global COVID-19 pandemic made plans to work with Medequa in order to purchase PPE products for the purposes of donating the PPE products to the Federal Emergency Management Agency ("FEMA").

### I. **The Purchase Order Between Medequa and SonerMed**

15. On or about August 12, 2020, Medequa entered into an agreement with SonerMed LLC ("SonerMed") to buy six million PPE products for Ten Million Two Hundred Thousand Dollars ($10,200,000.00) to be donated to FEMA . A true and accurate copy of the August 12, 2020 Purchase Order (the "Purchase Order") is hereto attached as Exhibit 1.

16. SonerMed was originally scheduled to confirm delivery of the subject PPE products to Medequa and FEMA by August 27, 2020 and deliver the subject PPE products by September 15, 2020. *See* Ex. 1, p. 4.

17. The parties amended the Purchase Order on September 12, 2020, extending the delivery date to September 25, 2020. A true and accurate copy of the September 12, 2020

Amendment to the Purchase Order and Escrow Agreement (the "First Amendment") is hereto attached as Exhibit 2.

18. The parties amended the Purchase Order again on October 21, 2020, extending the delivery date to October 27, 2020. A true and accurate copy of the October 21, 2020 Amendment to the Purchase Order and Escrow Agreement (the "Second Amendment") is hereto attached as Exhibit 3.

19. The parties amended the Purchase Order for a third time on November 4, 2020, extending the delivery date to November 13, 2020. A true and accurate copy of the November 4, 2020 Amendment to the Purchase Order and Escrow Agreement (the "Third Amendment") is hereto attached as Exhibit 4.

## II. The Escrow Agreement

20. Contemporaneously with the Purchase Order, Medequa and SonerMed entered into an Escrow Agreement with O'Neill & Partners. Pursuant to the Escrow Agreement, O'Neill & Partners, as the escrow agent, is authorized to disburse the funds in very specific circumstances, including but not limited to in accordance with joint instructions of the Buyer and Seller or if the Buyer serves a Cancellation Notice based on Seller's failure to deliver. A true and accurate copy of the August 12, 2020 Escrow Agreement (the "Escrow Agreement") is hereto attached as Exhibit 5, Section 4.

21. In accordance with the Purchase Order and Escrow Agreement, Medequa deposited half of the purchase amount, Five Million One Hundred Thousand Dollars ($5,100,000.00), with the Escrow Agent, Defendant O'Neill & Partners, upon SonerMed's execution of the Purchase Order. *See* Ex. 1 and 5.

22. The Escrow Agreement directed O'Neill & Partners, as Escrow Agent, to hold Medequa's funds in escrow, and release the Escrow Funds after certain enumerated conditions were satisfied. *See* Ex. 5, ¶ 4.

23. Specifically, the Escrow Agreement provided that O'Neill & Partners was authorized to disburse the Escrow Funds as follows:

> (i) In accordance with joint instructions of the Buyer and Seller as set forth in any written letter of direction to the Escrow Agent executed by the Buyer and the Seller;
>
> (ii) Upon delivery to the Escrow Agent of an Acceptance Document signed by FEMA of substantially in the form of Exhibit A attached to the Purchase Order and the Terms and Conditions, the Escrow Agent shall disburse to Seller an amount equal to the lesser of (x) the number of Goods confirmed by FEMA as having received by FEMA from or on behalf of Buyer at the Delivery Place and conforming to the requirements of the Purchase Order multiplied by the Unit Purchase Price and (y) the amount of the Escrow Deposit;
>
> (iii) In the event of the disbursement to the Seller pursuant to Section 4(a)(ii) above of less than the entire amount of the Escrow Deposit, the Escrow Agent shall contemporaneously disburse and return the remained of the Escrow Deposit to Buyer; and
>
> (iv) If Buyer delivers to Seller and the Escrow Agent a Cancellation Notice in the form of Exhibit B hereto based on the failure of Seller to deliver or arrange for the delivery of at least ninety percent (90%) of the Goods to FEMA at the Delivery Place by the Delivery Deadline, as to which TIME IS OF THE ESSENCE, the Escrow Agent shall disburse and return the entire Escrow Deposit to Buyer.

*See id.,* ¶ 4.

24. The Escrow Agreement in Section 4(a) provides that O'Neill & Partners is required to disburse the Escrow Funds no later than the close of business on the next business day following fulfillment of the respective disbursement conditions therein. *See id.,* ¶ 4(b).

25. On November 22, 2020, Medequa served a cancellation notice, per the Purchase Order and Escrow Agreement to O'Neill & Partners and SonerMed. A true and accurate copy of the November 22, 2020 Cancellation Notice (the "Cancellation Notice") is hereto attached as Exhibit 6.

26. On November 22, 2020, in light of the Cancellation Notice, counsel for Medequa also sent a letter to O'Neil & Partners requesting that the Escrow Funds, in the amount of Five Million One Hundred Thousand Dollars ($5,100,000.00), be returned to Medequa. A true and accurate copy of the November 22, 2020 correspondence to O'Neill & Partners is hereto attached as Exhibit 7.

27. O'Neill & Partners was obligated to return the Escrow Funds in the amount of Five Million One Hundred Thousand Dollars ($5,100,000.00) to Medequa by close of business on November 23, 2020, after Medequa complied with Section 4(a)(iv) of the Escrow Agreement and provided a Cancellation Notice on O'Neill & Partners and SonerMed.

28. Additionally, O'Neill & Partners was also obligated to disburse the Escrow Funds to Medequa by close of business on December 13, 2020, after Medequa and SonerMed jointly instructed O'Neill & Partners to disburse the Escrow Funds.

29. O'Neill & Partners has also failed to comply with Medequa's request for proof of the funds currently held in escrow.

### III. O'Neill & Partners' Refusal To Return the Escrow Funds

30. Unfortunately, SonerMed was unable to effectuate delivery of the PPE products.

31. Not only did O'Neill & Partners not return the Escrow Funds to Medequa within one business day of receipt of the Cancellation Notice on November 22, 2020, as required by the

Escrow Agreement, O'Neill & Partners did not even acknowledge receipt of the Cancellation Notice or respond until almost two weeks later.

32. On December 4, 2020 O'Neill & Partners responded to the November 22, 2020 correspondence only to the extent that the correspondence and Notice were received and a response would be forthcoming. A true and accurate copy of the December 4, 2020 correspondence from O'Neill & Partners is hereto attached as Exhibit 8.

33. Finally, on December 7, 2020, O'Neill & Partners responded to Medequa's Cancellation Notice stating that additional "due diligence" documents were needed, including but not limited to (1) the list of attempted and failed procurement transactions by Sonermed; (2) the contact information for the U.S. Government personnel liaison; and (3) the name of the beneficial owner of the funds. O'Neill & Partners cited "a transaction where there are irregularities and potential of fraud" as the reason for the request for additional documents and delay in transfer of Escrow Funds. A true and accurate copy of the December 7, 2020 correspondence from O'Neill & Partners is hereto attached as Exhibit 9.

34. On December 8, 2020, SonerMed advised O'Neill & Partners that its request for additional documents and information was inappropriate and outside the bounds of its role as outlined in the Escrow Agreement. A true and accurate copy of the December 8, 2020 correspondence from SonerMed is hereto attached as Exhibit 10.

35. On December 9, 2020, despite noting O'Neill & Partners' failure to cite any tangible issues, Medequa responded to requests stating (1) it had no information of SonerMed's failed efforts to procure PPE products; (2) there was no U.S. government liaison; and (3) Medequa is the owner of the funds. A true and accurate copy of the December 9, 2020 correspondence from Medequa is hereto attached as Exhibit 11.

36. On December 11, 2020, O'Neill & Partners served a letter on Medequa alleging that its response was deficient and inaccurate. For the first time, O'Neill & Partners cited vaguely to state and federal laws including anti-money laundering and USA Patriot Act laws and regulations as the reasoning for the request for additional information and refusal to disburse the funds. A true and accurate copy of the December 11, 2020 correspondence is hereto attached as Exhibit 12.

37. On December 12, 2020, SonerMed served a letter on O'Neill & Partners urging O'Neill & Partners to abide by the escrow agreement and disburse the funds to Medequa as required pursuant to the Escrow Agreement and the Purchase Order. A true and accurate copy of the December 12, 2020 correspondence is hereto attached as Exhibit 13.

38. On December 17, 2020, Medequa served a letter on O'Neill & Partners once again demanding that O'Neill & Partner comply with the Escrow Agreement and return the Escrow Funds based on the Cancellation Notice. A true and accurate copy of the December 12, 2020 correspondence is hereto attached as Exhibit 14.

39. Upon information and belief, O'Neill & Partners was a direct commercial participant in SonerMed's unsuccessful attempt to procure PPE products and, thus, has custody and control of the exact information it purportedly claims to seek regarding the failed transactions. *See* Ex. 14.

40. On February 9, 2021, counsel for Medequa, once again, attempted to resolve the issue of unreleased Escrow Funds with O'Neil & Partners. A true and accurate copy of the February 9, 2021 correspondence is hereto attached as Exhibit 15.

41. After receiving a response on February 10, 2021, counsel for Medequa requested to schedule a call on February 11, 2021 to discuss the issue and how it could be resolved. A true and accurate copy of the February 10, 2021 correspondence is hereto attached as Exhibit 16.

42. Unfortunately, the request went unanswered.

43. On March 3, 2021, counsel for Medequa again requested to schedule a call with O'Neill & Partners. Finally, O'Neill & Partners responded and scheduled a call. A true and accurate copy of the March 3, 2021 correspondence is hereto attached as Exhibit 17.

44. During the call, Mr. O'Neill stated that additional information was required for O'Neill & Partners to conduct a Due Diligence Audit, although a Due Diligence Audit of this nature had never been discussed when negotiating the Escrow Agreement, nor does the Escrow Agreement have any provisions requiring or even permitting the Escrow Agent to conduct said diligence.

45. Mr. O'Neill agreed to send a formal request for the information to counsel for Medequa after the call.

46. On March 19, 2021, after not receiving the request for information, counsel for Medequa requested the information request that was to be provided after the call. A true and accurate copy of the March 19, 2021 correspondence is hereto attached as Exhibit 18.

47. Finally, O'Neill & Partners responded by serving the formal information request, requesting the same information requested and responded to in December 2020. A true and accurate copy of the March 19, 2021 correspondence is hereto attached as Exhibit 19.

48. Despite asserting no legal basis for the requests, Medequa again attempted to comply in an effort to avoid litigation. On April 28, 2021, Medequa provided a letter from King Salman Humanitarian Aid and Relief Center demonstrating the beneficial owner identity of

Medequa and a letter from Sonermed regarding the actual steps taken to procure the PPE products. A true and accurate copy of the April 28, 2021 correspondence is hereto attached as Exhibit 20.

49.     After no response from O'Neill & Partners, counsel for Medequa followed-up in hopes that by providing the requested information, the Escrow Funds would finally be released. A true and accurate copy of the May 7, 2021 correspondence is hereto attached as Exhibit 21.

50.     On May 14, 2021, almost six month after the Cancellation Notice, O'Neill & Partners responded that the information was being validated through its "channels" and that the process takes time. A true and accurate copy of the May 14, 2021 correspondence is hereto attached as Exhibit 22.

51.     This lengthy process was never discussed during the negotiating and signing of the Escrow Agreement. In fact, it appears that this time consuming process would effectively render it impossible for O'Neill & Partners to ever comply with the Escrow Agreement's requirement to release the Escrow Funds within one business day of receipt of the Cancellation Notice.

52.     Today, almost three months after receiving all of the requested information, O'Neill & Partners has yet to release the Escrow Funds, request additional information, or explain in any substantive manner why the Escrow Funds have yet to be released or even provide proof that the Escrow Funds are being properly maintained by O'Neill & Partners.

53.     Despite continued requests from both Medequa and SonerMed to return the Escrow Funds to Medequa, or at the very least, provide proof that O'Neill & Partners is maintaining the Escrow Funds in an escrow account and they have not been improperly retained or disbursed to a third-party, O'Neill & Partners has failed to do either.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

54. Medequa repeats and realleges each allegation contained in paragraphs 1 – 53 of the Complaint as if fully set forth herein.

55. Medequa and O'Neill & Partners are parties to the Escrow Agreement, which is a valid and enforceable contract.

56. Medequa has complied with all of its obligations under the Escrow Agreement.

57. O'Neill & Partners' duties under the Escrow Agreement required it to disburse the Escrow Funds within one business day of receiving the Cancellation Notice from Medequa.

58. Furthermore, O'Neill & Partners' duties under the Escrow Agreement required it to disburse the Escrow Funds within one business day of receiving joint instruction from Medequa and SonerMed to disburse the Escrow Funds.

59. As alleged herein, O'Neill & Partners materially breached the Escrow Agreement by refusing to release the Escrow Funds to Medequa as required in the Escrow Agreement.

60. As a result of O'Neill & Partners' breaches, Medequa has been damaged in the amount of Five Million One Hundred Thousand Dollars ($5,100,000.00), plus interest thereon to the date of entry of judgment, plus attorneys' fees and exemplary damages.

## SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty)

61. Medequa repeats and realleges each allegation contained in paragraphs 1 – 60 of the Complaint as if fully set forth herein.

62. As an Escrow Agent, O'Neill & Partners owed fiduciary duties to Medequa, including the duty to exercise the utmost good faith and undivided loyalty toward Medequa, to act with the utmost care in its execution of its obligations and duties under the Escrow Agreement.

63. O'Neill & Partners breached its fiduciary duties to Medequa by its actions and omissions alleged herein, including among other things, refusing to release the Escrow Funds to Medequa pursuant to the Escrow Agreement.

64. As a result of O'Neill & Partners' breach of its fiduciary duties, Medequa has been damaged in the amount of Five Million One Hundred Thousand Dollars ($5,100,000.00), plus interest thereon to the date of entry of judgment and attorneys' fees and exemplary damages.

65. In conducting itself in the manner alleged herein and in committing the acts alleged herein, O'Neill & Partners acted maliciously and with wanton disregard of the rights to Medequa. By reason thereof, Medequa is entitled to exemplary damages against O'Neill & Partners to be determined at trial.

## THIRD CAUSE OF ACTION
### (Conversion)

66. Medequa repeats and realleges each allegation contained in paragraphs 1 – 65 of the Complaint as if fully set forth herein.

67. O'Neill & Partners wrongfully retained Five Million One Hundred Thousand Dollars ($5,100,000.00) placed into escrow by Medequa for the sole purpose of purchasing PPE products from SonerMed.

68. O'Neill & Partners refused to release the Escrow Fund to Medequa in accordance with the Escrow Agreement.

69. O'Neill & Partners refused to comply with Medequa and SonerMed's demands to return the Escrow Funds to Medequa and has continued its unlawful possession of the Escrow Funds.

70. O'Neill & Partners additionally refuses to provide any documentary evidence that the Escrow Funds are still being held in escrow.

71. O'Neill & Partners' conversion of Medequa's money, in the amount of Five Million One Hundred Thousand Dollars ($5,100,000.00), has deprived Medequa of its property by its unauthorized act in assuming dominion, despite Medequa's demand for its return.

72. As a result of O'Neill & Partners' conversion, Medequa has been damaged in an amount to be determined at trial, but not less than Five Million One Hundred Thousand Dollars ($5,100,000.00), plus interest thereon to the date of entry of judgment and attorneys' fees and exemplary damages.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands judgment against Defendant, as follows:

1. For damages in the amount of Five Million One Hundred Thousand Dollars ($5,100,000.00) and all of Plaintiff's attorneys' fees incurred in bringing this action against Defendant O'Neill & Partners;

2. Plaintiff's costs and disbursements incurred herein;

3. Prejudgment interest running from the date of the Cancellation Notice;

4. Attorney's costs and fees;

5. Punitive damages against Defendant O'Neill & Partners in the amount of Ten Million Dollars ($10,000,000.00); and

6. Such further relief as the Court deems just and equitable.

## DEMAND FOR TRIAL BY JURY

**WHEREFORE,** Plaintiff demands trial by jury on all counts so triable.

Dated: New York, New York
July 16, 2021

**CONDON & FORSYTH, LLP**

By: _____
Appen Menon
Joseph Czerniawski
Claire Huynh
7 Times Square
New York, New York  10036
(212) 894-6824

*Attorneys for Plaintiff*
MEDEQUA LLC