UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                   :

MEDEQUA LLC,                       :

                      :     **ORDER GRANTING SUMMARY**
              Plaintiff,    :     **JUDGMENT**

   -against-              :

                      :     21 Civ. 6135 (AKH)
O'NEILL & PARTNERS LLC,    :

              Defendant.  :

                      :

                      :
------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

        This action began as a suit by Plaintiff Medequa LLC ("Medequa") to enforce the

terms of an escrow agreement and recover the money held in escrow by Defendant O'Neill &

Partners LLC. After months of delay, Defendant accounted for only a portion of the escrow

funds, and its managing partner, Brian O'Neill, has been indicted for wire fraud and for making

false statements in connection with Plaintiff's funds. *See* 22 Cr. 57 (VEC). Plaintiff moved for

partial summary judgment on its breach of contract and breach of fiduciary duty claims on

November 11, 2021. Before filing a response, O'Neill was arrested and indicted. Since then, I

denied Defendant's motion to stay and ordered the parties to complete briefing on the motion for

summary judgment. Defendant filed an opposition brief but filed no Rule 56.1 Statement in

response to Plaintiff's Rule 56.1 Statement. For the reasons that follow, the motion for partial

summary judgment is granted in part and denied in part.

## BACKGROUND

        On August 12, 2020, Plaintiff Medequa agreed to purchase from SonerMed LLC

$10,200,000 worth of personal protective equipment products to be donated to the Federal

Emergency Management Agency ("FEMA") on behalf of the King Salman Humanitarian Aid and Relief Center ("Relief Center"). Medequa and SonerMed contemporaneously entered into an escrow agreement (the "Escrow Agreement") with Defendant O'Neill & Partners which appointed Defendant as the escrow agent. Upon SonerMed's execution of the purchase agreement, Medequa deposited half of the purchase amount, or $5,100,000, with O'Neill & Partners (the "Escrow Funds").

SonerMed never delivered the products. On November 22, 2020, Medequa issued a cancellation notice ("Cancellation Notice") in light of SonerMed's failure to deliver—the condition precedent to O'Neill & Partners' obligation to return the Escrow Funds. Despite Medequa's repeated requests, O'Neill & Partners has not returned the entirety of Escrow Funds. At one point O'Neill & Partners refused to return the Escrow Funds until it could complete "certain due diligence steps." At another point, O'Neill & Partners claimed that it was retaining the Escrow Funds because either the Relief Center or the Kingdom of Saudi Arabia may be the true beneficial owner of the Escrow Funds, asserting that this concern stemmed from various communications Defendant received from SonerMed, Medequa's prior counsel, and Saudi Arabia.

On July 16, 2021, Medequa brought this action to recover from O'Neill & Partners the $5,100,000 Escrow Funds, alleging breach of contract, breach of fiduciary duty, and conversion. Soon after it filed its original complaint, Medequa moved for a temporary restraining order and preliminary injunction to enjoin O'Neill & Partners from disbursing the Escrow Funds and to require O'Neill & Partners to account for the Escrow Funds with documentation. On August 3, 2021 I dismissed the Complaint because Plaintiff failed to plead adequately the existence of subject matter jurisdiction. Plaintiff filed the First Amended Complaint later the same day, curing that problem. I then denied the temporary restraining order

and injunction on August 6, 2021, but ordered O'Neill & Partners to interplead the Escrow

Funds into Court.

In three subsequent orders issued in August and September 2021 I ordered

Defendant to deposit the full amount held in escrow—$5,100,000—into the Disputed Ownership

Fund ("DOF") in the Court Registry Investment System ("C.R.I.S.") of the U.S. District Court,

Southern District of New York. *See* ECF Nos. 33, 36, 38. Defendant deposited $3,300,000 as

instructed, but failed to deposit the balance of the Escrow Funds. In my order dated September

23, 2021, I held Defendant and its managing partner, Brian O'Neill, in contempt of court for

failure to comply with my orders directing O'Neill to interplead the Escrow Funds. ECF No. 43.

I directed the U.S. Marshal to arrest Brian O'Neill and hold him in custody until he purged

himself of the contempt. On September 28, 2021, I gave Defendant leave to file a motion

seeking relief, provided he submit documentary proof of the status of the remaining Escrow

Funds, including when and where the Funds were deposited. ECF No. 44. After I granted

O'Neill a furlough of approximately 48 hours to complete the interpleader deposit, ECF No. 51,

he still did not deposit the balance of the Escrow Funds or provide satisfactory documentation of

the location of such funds. On October 14, 2021, O'Neill was returned to custody.

As of November 9, 2021, O'Neill had neither completed the interpleader nor

provided documentary proof of the status of the Escrow Funds. It appeared that O'Neill did not

have the funds to deposit, could not readily obtain the funds, feared some form of retaliation if he

were to disclose the location of the funds, or had used the funds for his own purposes. However,

further custody of O'Neill would not change anything, and I ordered O'Neill released on

November 19, 2021. *See* ECF Nos. 59, 69.

While O'Neill was in custody, Plaintiff moved for partial summary judgment.

However, before Defendant filed its response, Brian O'Neill was arrested on December 3, 2021

and charged with committing wire fraud, making false statements to the FBI, and committing

3

perjury. *See* 22 Cr. 57 (VEC), Dkt. Nos. 2–3.  On December 8, 2021, Defendant moved for a full stay of this case pending the outcome of O'Neill's criminal proceeding.  On January 26, 2022, O'Neill was formally indicated.  I denied the motion for a stay and ordered the parties to complete the briefing on Plaintiff's motion for partial summary judgment.

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the initial burden of pointing out evidence in the record, "which it believes demonstrate[s] the absence of a genuine issue of material fact . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may support an assertion that there is no genuine dispute of any material fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  If the movant fulfills its preliminary burden, the onus shifts to the non-movant to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The non-moving party may not rely on conclusory allegations or unsubstantiated speculation to defeat the summary judgment motion. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Courts must "draw all rational inferences in the non-movant's favor" while reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). A court may also deny or defer ruling on summary judgment when "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." F.R.C.P. 56(d).

Defendant argues that ruling on summary judgment is premature because discovery has not yet taken place and Defendant has not yet filed an Answer. That argument is unavailing. To begin, Defendant did not submit an affidavit or declaration, as required by Rule 56, explaining what evidence—or even what general categories of evidence—Defendant needs to oppose Plaintiff's motion. Such a failure "is fatal" to Defendant's claim that further discovery was necessary. *Next Comm'ns, Inc. v. Viber Media, Inc.*, 758 Fed.Appx. 46, 50 n.4 (2d Cir. 2018) (citing *Gurary v. Winehouse*, 190 F.3d 37, 43–44 (2d Cir. 1999) ("[T]he failure to file [a Rule 56] affidavit is fatal to a claim [that a party was precluded from conducting discovery] even if the party resisting the motion for summary judgment alluded to a claimed need for discovery in a memorandum of law.")). Defendant similarly failed to file its own Rule 56.1 Statement, or file a statement opposing Plaintiff's Rule 56.1 Statement. Defendant's failure to submit a statement controverting Plaintiff's statement allows me to treat the facts in Plaintiff's statement as admitted. *See* Local Civ. R. 56.1(c) ("[A statement required under Rule 56.1] will be deemed to be admitted for purposes of the motion unless specifically controverted"); *Cicio v. Alvarez*, 2022 WL 1003796, at *1 n.1 (S.D.N.Y. Apr. 4, 2022) (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)).

In any case, Plaintiff's partial summary judgment motion is for its claims of breach of contract and fiduciary duty, a motion that turns on straightforward application of the Escrow Agreement. As set forth in more detail below, there is no basis to conclude the Escrow Agreement is ambiguous or that there are "any specific facts showing that there is a genuine issue for trial." *Tennenbaum Capital Partners LLC v. Kennedy*, 2009 WL 2913679, at *3 (S.D.N.Y. Sept. 11, 2009) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002)).

## I.   BREACH OF CONTRACT

The Escrow Agreement provides that New York law governs. Escrow Agreement § 11. Under New York law, the elements of a breach of contract claim are "(1) the existence of

an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *see also Diesel Propos S.R.L. v. Greyston Bus. Cred. II LLC,* 631 F.3d 42, 52 (2d Cir. 2011).

There is no dispute as to the existence of the Escrow Agreement, nor is there any dispute that Plaintiff performed its obligations under that agreement by depositing the contemplated funds with Defendant.  Plaintiff maintains the Escrow Agreement was breached when (i) Defendant refused to return the escrow funds to Plaintiff, and (ii) when Defendant transferred at least $1.8 million of the escrow funds out of the escrow account to an unknown party.

In New York, summary judgment in a contract dispute is appropriate "where the agreement's language is unambiguous and conveys a definite meaning." *CP III Rincon Towers, Inc. v. Cohen*, 666 Fed.Appx. 46, 51 (2d Cir. 2016) (citing *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993)).  Whether a contract is ambiguous is a question of law. *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 257 (2d Cir.2002).  "Contractual language is unambiguous when it has a definite and precise meaning, unattended by any danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *John Hancock Mutual Life Ins. Co. v. Amerford Int'l. Corp.*, 22 F.3d 458, 461 (2d Cir.1994). The terms of Escrow Agreement at issue here are clear and unambiguous.  The contract is a typical escrow agreement and the rights and obligations of the contracting parties are set forth in plain terms. In any case, Defendant does not offer any interpretation contrary to the interpretation Plaintiff offers and only argues that any ambiguity should be construed in its favor.  Because I find the Escrow Agreement is

unambiguous, the Escrow Agreement speaks for itself and summary judgment is appropriate at this juncture.[1]

The evidence shows that Defendant breached the Escrow Agreement in each of the identified ways and that Plaintiff is entitled to summary judgment on its breach of contract claim. Although Defendant disputes that conclusion, there is no genuine dispute of material fact that could enable Defendant to prevail.

## A. Failure to Return Escrow Funds

Plaintiff argues that after Defendant received the Cancellation Notice, Defendant's refusal to return the Escrow Funds constitutes a breach of the Escrow Agreement. Section 4(b) requires Defendant, as the Escrow Agent, to disburse the Escrow Funds within one business day following fulfillment of a condition in Section 4(a), which lists four instances in which disbursement is permitted. That section provides that "If [Medequa] delivers to [SonerMed] and the Escrow Agent a Cancellation Notice in the form of Exhibit B . . . the Escrow Agent shall disburse and return the entire Escrow Deposit to Buyer." Escrow Agreement § 4(a)(iv). In a letter dated November 22, 2020, Medequa delivered to SonerMed and Defendant a cancellation notice. *See* Otrok Decl., Ex. 7. That letter stated "[SonerMed] has not delivered the products to date" and that "notice is hereby given that [Medequa] cancels the Purchase Order with immediate effect." *Id.* Counsel for Medequa also delivered a copy of that letter to Defendant and requested that Defendant return the entirety of the Escrow Funds within 48 hours. Otrok Decl., Ex. 8. Subsequently, SonerMed sent a letter to Defendant confirming the cancellation notice and requesting that Defendant return the Escrow Funds to Medequa. *See*

---

[1] Even if the Escrow Agreement were ambiguous, Defendant has not suggested the existence of any extrinsic evidence that might bear on interpretation of the Agreement and render summary judgment inappropriate. *See Williams & Sons Erectors v. South Carolina Steel*, 983 F.2d 1176, 1183–84 (2d Cir.1993) (ambiguity without existence of extrinsic evidence presents an issue of law for the court to rule on); *Mellon Bank, N.A. v. United Bank Corp.*, 31 F.3d 113, 116 (2d Cir.1994).

Otrok Decl., Ex. 14.  Defendant did not do so, despite recognizing on December 7, 2020 and December 11, 2020 that the parties had cancelled the contract. Otrok Decl., Exs. 10, 13.

In opposition to the instant motion, Defendant argues that genuine disputes exist as to whether the cancellation notice was in the appropriate form and authorized by a person listed in Exhibit A to the Escrow Agreement.  Defendant's arguments are meritless.  Although the cancellation did not contain the exact wording provided for in the Escrow Agreement, that is not grounds for refusal to return the deposit. *See Wuhan Airlines v. Air Alaska, Inc.*, 1998 WL 689957, at *3 (S.D.N.Y. Oct. 2, 1998) "(In Cardozo's famous formulation of the role of common sense in contract construction, 'The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal.'" (quoting *Wood v. Duff– Gordon*, 222 N.Y. 88, 91, 118 N.E. 214 (1917))). The cancellation notice Medequa submitted, and which SonerMed also approved, detailed that SonerMed had failed to deliver the contracted goods and that Medequa canceled the Purchase Order. *See* Otrok Decl., Exs. 7–8.  That notice contained the substance required by Exhibit B of the Escrow Agreement.

On August 12, 2020, counsel for Medequa sent to SonerMed and Defendant a copy of Exhibit A which listed Daniel Madero, CEO of SonerMed, and Khaled Otrok, Sales Manager of Medequa, as authorized persons for the purposes of cancellation. *See* Otrok Decl., Ex. 6. In opposing the instant motion, Defendant asserts that there were no authorized persons but offers no evidence to contradict Plaintiff's evidence and makes no suggestion that discovery would yield any evidence that would create a genuine dispute. *See Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995).  Additionally, there is no evidence that, prior to the initiation of this litigation, Defendant objected to the funds transfer on the grounds that it had not been approved by an authorized signatory.  Defendant's attempt to do so now cannot form the basis for defeating enforcement of the Escrow Agreement.

8

Lastly, Defendant argues that, under the circumstances, O'Neill & Partners had discretion to decline to return the funds. Section Five of the Escrow Agreement imparts some discretion to the Escrow Agent, in certain circumstances, to refuse to take action under the Agreement and instead interplead the Escrow Funds. Specifically, the Escrow Agreement provides that:

> Notwithstanding any provision contained herein to the contrary, the Escrow Agent, including its officers, directors, employees and agents, shall:
>
> (a) be entitled to refrain from taking any action contemplated by this Agreement in the event that it becomes aware of any disagreement between the parties hereto as to any facts or as to the happening of any contemplated event precedent to such action; . . .
>
> (e) in the event that (i) any dispute shall arise between the parties with respect to the disposition or disbursement of any of the assets held hereunder or (ii) the Escrow Agent shall be uncertain as to how to proceed in a situation not explicitly addressed by the terms of this Agreement whether because of conflicting demands by the other parties hereto or otherwise, the Escrow Agent shall be permitted to interplead all of the assets held hereunder . . .

Escrow Agreement § 5. However, the only disagreement that may have existed between the parties was a disagreement between Defendant and the other two parties regarding whether Defendant was permitted to complete purported due diligence checks before returning the Escrow Funds. But such due diligence checks are not contemplated anywhere in the Escrow Agreement and Defendant's brief identifies no state or federal law that required such checks. Furthermore, Defendant's remedy if there were a dispute is to interplead the Escrow Funds. It has failed to do so. Accordingly, Defendant cannot invoke Section 5 of the Escrow Agreement to justify its breach.

## B. Unauthorized Transfer of Escrow Funds

Defendant breached the terms of the Escrow Agreement in a second, independent way when it transferred at least $1.8 million of the Escrow Funds out of the escrow account. The terms of the Escrow Agreement unambiguously provide that "[u]ntil disbursed in accordance

with Section 4 below, the Escrow Deposit shall remain on deposit in the Escrow Account, and the Escrow Account Agent shall have no authority or responsibility to invest the Escrow Deposit." Escrow Agreement § 3. Section 4 of the Agreement prohibits Defendant from disbursing the escrow funds except in four circumstances. *Id.* § 4(a). Other than receipt of a Cancellation Notice, none of those circumstances was present and Defendant does not contend that any disbursement was authorized.[2]

After I required Defendant to interplead the full $5.1 million of the Escrow Funds through repeated court orders, Defendant deposited $3.3 million on September 22, 2021. That left $1.8 million unaccounted for. In subsequent declarations, made under penalty of perjury, Brian O'Neill represented that he could complete the interpleader only after he received additional funds from separate transactions. *See* Oct. 13, 2021 O'Neill Decl., ECF No. 54, ¶¶ 2–3 ("as many as four payment transactions . . . are expected to result in my receipt of funds sufficient to complete the remaining $1,800,000 interpleader deposit to this Court. . . . Once such funds are received, I can wire them to the Court's deposit registry"); *id.* ¶ 5 (describing a transaction that would enable O'Neill to transfer a series of weekly payments to the Court in satisfaction of the interpleader order). At a conference on October 25, 2021, Defendant's counsel further represented that "at the time that Mr. O'Neill submitted the $3.3 million, that was all of the escrow funds he was holding [under the Escrow Agreement]." Oct. 25, 2021 Conf. Tr. at 15:12–14.

The only rational conclusion that could be drawn from those representations is that Defendant did not have in its possession at least $1.8 million of the Escrow Funds. Defendant presents no alternate interpretation of those statements, and there is no evidence to show that Defendant made a transfer of the unaccounted for $1.8 million pursuant to Section 4(a)

---

[2] Section 4(a)(iv) authorizes disbursement to Plaintiff upon receipt of a Cancellation Notice, as discussed above.

of the Escrow Agreement. The only other possible explanation is that Defendant made an unauthorized transfer of at least $1.8 million, or appropriated that amount to its own use, in breach of the Escrow Agreement. That is sufficient for Plaintiff to prove its claim for breach of contract.

## II.    BREACH OF FIDUCIARY DUTY

Plaintiff's breach of fiduciary duty claim is duplicative of Plaintiff's claim for breach of contract. In making a claim for breach of fiduciary duty a plaintiff must show "[1] the existence of a fiduciary duty, [2] a knowing breach of that duty, and [3] damages resulting from the breach." *Dewitt Stern Group, Inc. v. Eisenberg*, 257 F.Supp.3d 542, 585 (S.D.N.Y. 2017) (citing *Johnson v. Nextel Commc'ns*, 660 F.3d 131, 138 (2d Cir. 2011)). However, "[w]here a fiduciary duty is based upon a comprehensive written contract between the parties, a claim for breach of fiduciary duty is duplicative of a claim for breach of contract" and a plaintiff cannot recover on both theories. *Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Publishing Co.*, 580 F.Supp.2d 285, 294–95 (S.D.N.Y.2008). A breach of fiduciary duty claim is duplicative when it is "based on allegations of fiduciary wrongdoing that are expressly raised in plaintiff's breach of contract claim." *Northern Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F.Supp.2d 94, 106 (S.D.N.Y. 2013) (citations omitted) (dismissing breach of fiduciary duty claim that was "identical in substance to the breach of contract claim").

Here, Plaintiff's claims for breach of contract and breach of fiduciary duty are duplicative of one another. No additional relief shall be granted on the breach of fiduciary duty claim because it is "premised upon the same facts and seek[s] the same damages" as the breach of contract claim. *Northern Shipping Funds*, 921 F.Supp.2d at 106 (citing *E–Global Alliances, LLC v. Anderson*, 2011 WL 8879268, at *9 (S.D.N.Y. May 11, 2011)). Here, Defendant

breached its fiduciary duty through the same conduct that constitutes a breach of contract. Count Two is dismissed in light of summary judgment on Count One.

### III.   CONVERSION

Plaintiff's claim for conversion also fails as a matter of law.  To prevail on a claim for conversion, Plaintiff must show (1)"legal ownership or an immediate superior right of possession to a specific identifiable thing" and (2) "that the defendant exercised an unauthorized dominion over the thing in question . . . to the exclusion of the plaintiff's rights." *Mackey Reed Elec., Inc. v Morrone & Assoc., P.C.*, 125 A.D. 3d 822, 824 (2d Dept. 2015).  For claims of conversion involving money, a plaintiff must also allege a specific, identifiable fund and an obligation to return or otherwise treat the specific fund in a particular manner. *Thys v Fortis Securities LLC*, 74 A.D. 3d 546 (1st Dept. 2010).

However, in New York, "a conversion claim may not be maintained where damages are merely sought for a breach of contract." *Dragons 516 Ltd v. GDC 138 E 50 LLC*, 2020 WL 6081957, at *3 (N.Y. Sup. Ct. Oct. 13, 2020) (citing *Sutton Park Dev. Trading Corp. v Guerin & Guerin*, 297 A.D.2d 430, 432 (3d Dept. 2002)).  A plaintiff must allege "wrongs and damages distinct from those predicated on a breach of contract." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 204 (S.D.N.Y. 2011).  To determine whether a conversion claim is duplicative, "courts look both to the material facts upon which each claim is based and to the alleged injuries for which damages are sought." *Ellington Credit Fund*, 837 F. Supp. 2d at 204 (citing *Physicians Mut. Ins. Co. v. Greystone Servicing Corp., Inc.*, 2009 WL 855648, at *10 (S.D.N.Y. Mar. 25, 2009)).

Here, Plaintiff relies on the same set of facts to establish both the breach of contract and the conversion claims.  Additionally, Plaintiffs seeks the same damages for each claim; if Plaintiff were to recover on each claim, it "would in effect be paid twice." *AD Rendon*

*Commc'ns, Inc. v. Lumina Ams., Inc.*, 2007 WL 2962591, at \*5 (S.D.N.Y. Oct. 10, 2007).
Accordingly, Plaintiff's claim for conversion is dismissed.

   I reach this conclusion even though Plaintiff did not move for summary judgment
on its conversion claim and Defendant did not move to dismiss the conversion claim as
duplicative. District courts have "the power to dismiss a complaint *sua sponte* for failure to state
a claim so long as the plaintiff is given notice and an opportunity to be heard." *Wachtler v. Cty.
of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (citations and quotations omitted); *see also Sanya
Lanausse v. City of New York*, 2016 WL 2851337, at \*2 (S.D.N.Y. May 13, 2016). "Even if a
party does not make a formal motion under Rule 12(b)(6), the district judge on his or her own
initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as
long as the procedure employed is fair to the parties." Charles A. Wright & Arthur R. Miller, 5B
Fed. Prac. & Proc. Civ. § 1357 (3d ed.). Because the proceedings in this case have taken the
better part of a year and Plaintiff has already encountered significant delays, I see no reason to
further lengthen the proceedings. To the extent Plaintiff believes it has received an insufficient
opportunity to be heard, it may raise the issue by way of a motion to reconsider. Count Three is
dismissed.

## CONCLUSION

   Plaintiff's motion is granted as to Count One—claim for breach of contract—and
the Clerk shall enter judgment for the Plaintiff in the amount of $5,100,00, plus interest from the
date of judgment, and tax costs. The funds on deposit in the Disputed Ownership Fund of the

C.R.I.S. will remain on deposit pending resolution of the motion to intervene and further

proceedings, as necessary.  The Clerk shall terminate ECF No. 60.

            SO ORDERED.

Dated:       July 25, 2022
            New York, New York                ALVIN K. HELLERSTEIN
                                          United States District Judge

14